IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CHRISTIAN SPEAKMAN,

      Plaintiff,

v.                                             Civil Action 2:20-cv-5341
                                                   Judge James L. Graham
                                                   Magistrate Judge Kimberly A. Jolson

COMMISSIONER OF
SOCIAL SECURITY,

      Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff, Christian Speakman, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). For the reasons set forth below, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's non-disability determinations.

I.      BACKGROUND

Plaintiff protectively filed his application for DIB in 2018, alleging that he was disabled beginning December 31, 2017. (Tr. 149–50). After his application was denied initially and on reconsideration, an Administrative Law Judge (the "ALJ") held a video hearing on October 22, 2019. (Tr. 27–53). On December 19, 2019, the ALJ issued a decision denying Plaintiff's application for benefits. (Tr. 9–26). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–6).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on October 11, 2020 (Doc. 1), and the Commissioner filed the administrative record on April 5, 2021 (Doc. 12). Plaintiff filed his Statement of Errors on July 5, 2021 (Doc. 15). Defendant filed an

Opposition on August 19, 2021.  (Doc. 17).  Plaintiff did not file a Reply.  Accordingly, the matter is ripe for review.

>    A.     **Relevant Medical Evidence**
>
>    The ALJ summarized Plaintiff's medical records:
>
>    Although the [Plaintiff] alleges disability as of December 2017, medical imaging and clinical studies around that time failed to corroborate alleged symptoms. A cervical MRI showed a small disc bulge at T1-T2, but a solid cervical fusion, confirming indications of cervical spine surgery a few years prior to the alleged onset date. (2F; 4F/9). An electromyogram (EMG) was recommended to correlate symptoms, upon which, there was subtle evidence of left C5 radiculopathy. However, nerve conduction study (NCS) findings were within normal limits. (2F). Due to overall normal findings on medical imaging and clinical studies, further surgical intervention was deemed unnecessary. (4F/7).
>
>    In addition, November 2017 physical exams further showed minimal deficits, as the [Plaintiff] had normal motor function and reflexes, negative Tinel's sign, but he had some sensory deficits in the left hand. (2F).
>
>    Conservative treatment measures were recommended. Indeed, physical therapy improved symptoms. In November 2017, although the [Plaintiff] continued to complain of unrelieved pain, objective examinations showed normal strength in the bilateral upper extremities and improved neck range of motion in all directions. (3F/3).
>
>    By January 2018, the [Plaintiff]'s improvement continued with physical therapy, including neck range of motion. He also had normal strength. The [Plaintiff] also endorsed improvement with physical therapy, but indicated that awkward positions and lifting at work re-aggravated symptoms. (3F/16).
>
>    Pain injections further improved symptoms. By February 2018, the record indicates that the [Plaintiff] had undergone multiple rounds of pain injections to his cervical, thoracic and lumbar spines. Physical exams continued to show few deficits, despite continued complaints of neck pain radiating in to the arms, and thoracic and lumbar pain. The [Plaintiff] had normal gait and ambulated independently, he had 5/5 motor strength throughout, and negative straight leg raises. Muscle bulk and tone were normal in the upper extremities. The [Plaintiff] had reduced extremity reflexes, but sensation was intact. (4F/6-7; 5F/12, 16).
>
>    The [Plaintiff] also reported improved pain with tramadol in March 2018. Physical examinations continued to show few deficits. The [Plaintiff] was in no acute distress. He had mild limited range of motion of the cervical spine, but negative Hoffman test (ruling out reflex deficits), or Spurling's test (ruling out radicular

symptoms). He had good strength, without atrophy or weakness. He was neurologically intact. (5F/7).

In April 2018, a neurosurgical consultation resulted in recommendations for continued conservative treatment, without surgical intervention. Although the [Plaintiff] alleged that pain injections had been ineffective, trigger point injections were recommended. Physical exams at that time remained without concern. (19F/15-16).

In May 2018, treatment continued to be conservative, as physical therapy was recommended pursuant to complaints of back and joint pain. X-rays confirmed degenerative joint disease of the neck and shoulders, but none in the hands. (6F/4).

In June 2018, the [Plaintiff] requested a refill of tramadol, in lieu of starting a spinal cord stimulator trial, further suggesting that current conservative treatment adequately managed symptoms. (8F/4). Upon physical examination, the [Plaintiff] was in no acute distress. He had mild limited range of motion of the cervical spine, but negative Hoffman's or Spurling's tests. He had good strength, without atrophy or weakness, and continued to be neurologically intact. (8F/6).

In September 2018, the [Plaintiff] returned to physical therapy, which continued until late October 2018, whereupon the [Plaintiff] cancelled his session and never returned to treatment. However, therapy discharge records note progress, particularly improvement in core and hip strength, despite the [Plaintiff]'s allegations of no change in symptoms. (18F/110, 112).

Minimal deficits on physical exams continued in September 2018 at the [Plaintiff]'s follow-up for a medication check (12F/14), largely unchanged in the last three months, since June 2018.

Medical imaging from December 2018 continued to confirm minimal deficits. A lumbar MRI showed mild disc degeneration without spinal canal stenosis. (12F/17). Lumbar x-rays further showed normal alignment and curvature of the spine with some disc space narrowing and facet arthropathy at L4-L5 and L5-S1. There was also minimal scoliosis concave to the left at the thoracolumbar junction. The sacroiliac joints were normal, however. (12F/19). A CT scan of the cervical spine showed C5-C6 ACDF without evidence of hardware complication. Alignment appeared normal, however, there was moderate right neural foraminal narrowing at C5-C6. (12F/18; duplicate at 16F/18-19).

December 2018 physical exams continued to show minimal deficits. The [Plaintiff] was noted to be pleasant and in no acute distress. He had limited cervical spine range of motion, good strength, and no atrophy. Also, he had no hand weakness and was neurologically intact. (16F/12).

3

>By March 2019, the [Plaintiff]'s cervical and lumbar pain, and radiculopathy of the thoracic region were deemed stable, and he presented for medication refills. Conservative treatment continued, including lumbar and cervical injections. He further reported pain relief with tramadol. He continued with his home exercise program, and further facet joint care was deemed unwarranted. (12F/11-12).
>
>Physical exams remained largely unchanged, with few deficits, over the last year. The [Plaintiff] was pleasant, and in no acute distress. He still presented with mild limited cervical spine range of motion, good strength, no atrophy or weakness, and good reflexes. Hoffman's and Spurling's tests continued to be negative. (12F/13).
>
>June 2019 records indicate further medication adjustments, while the [Plaintiff] reported improvement with a prednisone taper. It was further noted that Lyrica improved left arm pain. The [Plaintiff] continued to schedule injections for neck pain. (11F/12, 14).
>
>Physical exams continued to show minimal deficits, largely unchanged from March 2018 exams, more than a year earlier. The [Plaintiff] was pleasant, and in no acute distress. He still presented with mild limited cervical spine range of motion, good strength, no atrophy or weakness, and good reflexes. Hoffman's and Spurling's tests continued to be negative. (12F/8). The [Plaintiff] continued to report benefit from tramadol, as Lyrica was too expensive. (12F/9).
>
>The [Plaintiff] continued to avail himself of conservative treatment, as he underwent additional lumbar injections in August 2019. (12F/6). Despite the [Plaintiff]'s allegations of worsened pain with walking and changing positions, September 2019 physical exams continued to show him to be in no acute distress, no weakness, and no concerns about the extremities, despite complaints of lumbar pain. His symptoms were deemed stable with a home-directed range of motion program and medication. Repeat injections continued to be scheduled, despite the [Plaintiff]'s complaints of ineffectiveness. (16F/5).
>
>Self-reported activities at the [Plaintiff]'s May 2018 psychological evaluation further support a reduced range of sedentary work. The [Plaintiff] indicated that he spent his day doing household tasks, including food preparation, shopping, running errands, and helping his wife clean and cook. (7F/3).

(Tr. 16–18).

    **B.    The ALJ's Decision**

The ALJ found that Plaintiff meets the insured status requirement through December 31, 2020, and that he had not engaged in substantial gainful employment since his alleged onset date of December 31, 2017. (Tr. 14). The ALJ determined that Plaintiff has the severe impairments of

4

lumbar and cervical degenerative disc disease. (*Id.*). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, meet or medically equaled a listed impairment. (Tr. 15).

The ALJ also assessed Plaintiff's residual functional capacity ("RFC"):

After careful consideration of the entire record, [the ALJ] find[s] that that the [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except occasionally operate foot controls bilaterally; frequently operate hand controls bilaterally; occasionally reach overhead bilaterally; frequently reach in all other directions bilaterally; frequently handle items bilaterally; frequently finger bilaterally; frequent feeling bilaterally; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally stoop, kneel, crouch and crawl; never work at unprotected heights; occasionally work around moving mechanical parts; occasionally operate a motor vehicle; occasionally work in vibration; can do semi-skilled work.

(*Id.*).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence and other evidence in the record …" (Tr. 16).

The ALJ also discussed the prior administrative findings from state agency reviewing physicians:

The State DDS opinions are unpersuasive, as they opined that the [Plaintiff] was limited to light work, including limited overhead reaching on the left. The State medical consultants did not have the entire evidence of record now available at the hearing level. Thus, the record more appropriately supports a reduced range of sedentary work. The record documents the [Plaintiff]'s complaints of neck pain radiating into the upper extremities, and low back pain worsened by walking and standing. Physical exams, however, consistently show no gait deficits or neurological deficits, and 5/5 muscle strength and tone throughout.

(Tr. 19).

Relying on a vocational expert's testimony, the ALJ concluded that Plaintiff was unable to perform his past relevant work as an auto body repairman but could perform jobs that exist in

5

significant numbers in the national economy, such as an information clerk, order clerk, and a charge account clerk. (Tr. 20-21). The ALJ therefore concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from December 31, 2017, through the date of this decision (20 CFR 404.1520(g))." (Tr. 21).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## III. DISCUSSION

Plaintiff raises three assignments of error. He first alleges that the ALJ erred at step two of the disability determination process by failing to find that Plaintiff's cervical, thoracic, and lumbar radiculopathy were medically determinable impairments. (Doc. 15 at 4–7). Plaintiff next

alleges the ALJ erred at step three by failing to find that his impairments meet or equal the requirements of Listing 1.04. (*Id.* at 7–12). Finally, Plaintiff alleges that the ALJ's subjective symptom analysis (formerly referred to as a "credibility determination") was deficient. (*Id.* at 13–14).

### A. The ALJ's Step-Two Analysis

Plaintiff alleges that the ALJ erred at step two because she failed to find that Plaintiff's cervical, thoracic, and lumbar radiculopathy were medically determinable impairments. The Undersigned finds that this allegation of error lacks merit.

An ALJ must make several determinations at step two. First, an ALJ must consider if a claimant's impairment constitutes a "medically determinable" impairment, i.e., an impairment that results from anatomical, physiological or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. §§ 404.1520; 404.1521. If an impairment is medically determinable, then an ALJ must determine whether it is severe. *Id.* A "severe impairment" is defined as "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).

The finding of at least one severe impairment at step two is merely a threshold inquiry, the satisfaction of which prompts a full investigation into the limitations and restrictions imposed by all the individual's impairments. *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007). "And when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two '[does] not constitute reversible error.'" *Id.* (quoting *Maziarz v. Sec'y of Health and Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)); *accord Smith v. Comm'r of Soc. Sec.*, No. 2:20-cv-1511, 2021 WL

7

972444, at *10 (S.D. Ohio Mar. 16, 2021) (finding no error despite ALJ's failure to designate plaintiff's neuropathy as a medically determinable or severe impairment where the ALJ discussed plaintiff's neuropathy and considered its impact on plaintiff's ability to work).

Here, Plaintiff argues that the failure to classify an impairment as medically determinable should be subject to a different standard of review than the failure to classify an error as severe. (Doc. 15 at 6) ("The error is different than the ALJ merely mischaracterizing a severe impairment, as a non-severe impairment, because, in such a situation, the non-severe impairment would still receive consideration throughout the evaluation process."). True, when "an alleged impairment is not medically determinable, an ALJ need not consider that impairment in assessing the RFC." *Jones v. Comm'r of Soc. Sec.*, No. 3:15-cv-00428, 2017 WL 540923, at *6 (S.D. Ohio Feb. 10, 2017). But when the ALJ does consider the evidence supporting the impairment when crafting the RFC, as the ALJ did here, the harmless-error analysis should be the same. In other words, Plaintiff's argument "raises a distinction without a difference . . . ." *Fresquez v. Comm'r of Soc. Sec.*, No. 1:18cv114, 2019 WL 1440344 at *1 (S.D. Ohio Mar. 31, 2019) (declining to apply a different harmless-error analysis when the ALJ did not list plaintiff's chronic fatigue syndrome as a medically determinable impairment at step two yet considered it nonetheless in the RFC).

The ALJ determined that Plaintiff's lumbar and degenerative disc disease were medically determinable and severe. (Tr. 14). The ALJ did not, however, find that Plaintiff's cervical, thoracic, and lumbar radiculopathy were medically determinable impairments. Defendant urges that any error was harmless. The Undersigned agrees.

Plaintiff does not point to, and it is not apparent from the record that there are any functional limitations attributable to his cervical, thoracic, and lumbar radiculopathy that the ALJ failed to consider. The only functional limitations in this record were from the state agency reviewing

physicians who found that Plaintiff was capable of light work with certain limits including no overhead reaching on the left. (Tr. 62, 75). The ALJ expressly considered those limitations and found that Plaintiff was less capable, crafting an RFC for sedentary work. (Tr. 19). Moreover, the ALJ determined that the record "fails to corroborate alleged neurological damage, resulting in radicular pain, as physical exams consistently showed the claimant to be neurologically intact, with full muscle strength and tone throughout." (Tr. 19). Substantial evidence supports that determination—the record reflects 5/5 strength (Tr. 671, 768, 770), "good strength" (Tr. 330, 370, 325, 367, 364, 493, 443, 441, 436), or "no weakness" (Tr. 484) examination findings.

For these reasons, the Undersigned finds that the ALJ did not commit reversible error at step two.

    **B.**    **The ALJ's Step Three Analysis – Listing 1.04**

Plaintiff alleges that the ALJ erred by failing to find that he met the criteria for Listings 1.04A and 1.04C. The Undersigned finds that this allegation also lacks merit.

At step three, an ALJ must compare a claimant's impairments to an enumerated list of medical conditions that the Social Security Administration has deemed "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). Each Listing describes "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. § 404.1525(c)(3). The claimant bears the burden of showing that his impairment meets or medically equals a Listing. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

Listing 1.04, which was in effect at the time the ALJ issued her unfavorable determination, dealt with spinal disorders. It provided:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral

> fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
>> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); *or*
>>
>> . . .
>>
>> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04 (emphasis added). Plaintiff says that the ALJ erred by failing to find that he met the criteria for Listings 1.04A and 1.04C.

Plaintiff has not shown that the ALJ erred because she failed to find that Plaintiff met Listing 1.04A. The ALJ determined that Plaintiff did not meet that Listing because there was "no evidence of positive straight leg raises both sitting and supine, as the claimant alleges lumbar degenerative disc disease, or involvement of the low back, as a basis for disability." (Tr. 15). In fact, when Plaintiff had been administered a straight leg raise test, it was negative. (Tr. 17 (citing Tr. 312). Plaintiff does not dispute that he was required to produce such evidence of a positive straight leg raise test to meet Listing 1.04A, and yet he does not point to any such record evidence. Nor has the Undersigned located any after independent search.

Plaintiff has also not shown that the ALJ erred because she failed to find that he met Listing 1.04C. He Plaintiff has offered no evidence that shows an inability to ambulate effectively as that term is defined under 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b)(1). The medical record does not show that plaintiff experienced "an extreme limitation of the ability to walk; i.e., an

impairment(s) that interferes very seriously with [his] ability to independently initiate, sustain, or complete activities." *Id.* No examiner or treating provider documented that Plaintiff had an inability to ambulate normally as that term is defined in the listing. Indeed, the only pertinent examination findings indicate that Plaintiff was ambulatory (Tr. 338, 448), ambulated independently (Tr. 767, 770), or had normal gait (Tr. 335, 313, 768, 770).

In support of his step three allegations of error, Plaintiff relies on the Sixth Circuit's opinion in *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 415–16 (6th Cir. 2011). In that case, an ALJ found that a claimant had severe mental and physical impairments at step two, but then only analyzed whether the claimant's physical impairments met or equaled a Listing but neglected to analyze if the claimant's mental impairments did so. *Id.* In this case, however, the ALJ explicitly indicated that she considered all the listings, paid "particular attention to listings 1.04[,]" and specifically discussed why Plaintiff did not meet Listing 1.04A. (Tr. 15). In short, the ALJ here, unlike the ALJ in *Reynolds*, did not skip a step in the disability determination process. And the Sixth Circuit recognizes that any error with respect to an ALJ's step-three analysis is harmless unless the claimant can establish that he satisfied the listing in question. *Forrest v. Comm'r of Soc. Sec.,* 591 F. App'x 359, 366 (6th Cir. 2014); *see also Chappell v. Comm'r of Soc. Sec.,* No. 1:14–cv–1005, 2015 WL 4065261, at * 4 (W.D. Mich. July 2, 2015). As already explained, Plaintiff has not established that he meets Listing 1.04A or 1.04C.

Plaintiff also alleges that the ALJ erred because she did not find that Plaintiff's impairments were medically equivalent to Listings 1.04A or 1.04C. It is possible for a claimant to provide evidence of a medical equivalent to a listing. 20 C.F.R. §§ 404.1526, 416.926. But to do so, "the claimant must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 854 (6th Cir. 2011)

11

(citing *Sullivan v. Zebley,* 493 U.S. 521, 531 (1990) (emphasis in original)); *Thacker v. Soc. Sec. Admin.,* 93 F. App'x 725, 728 (6th Cir. 2004) ("When a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency.") (citing *Evans v. Secretary of Health & Human Servs.,* 835 F.2d 161, 164 (6th Cir. 1987)). Again, Plaintiff has not pointed to evidence showing that he can satisfy every requirement of either Listing. Nor has the Undersigned found such evidence after independent review.

For all these reasons, the Undersigned finds that the ALJ did not commit reversible error at step three and that Plaintiff's allegations lacks merit.

### C. The ALJ's Subjective Symptom Analysis

Plaintiff alleges that the ALJ erred when she assessed his subjective symptoms, formerly referred to as a credibility determination. Specifically, Plaintiff alleges that the ALJ erred because she failed to consider that Plaintiff's persistent attempts to obtain pain relief enhanced his credibility as set forth in Social Security Ruling 16–3p, Evaluation of Symptoms in Disability Claims. The Undersigned finds that this allegation of error lacks merit.

When a claimant alleges symptoms of disabling severity, an ALJ must follow a two-step process for evaluating those symptoms. *See* 20 C.F.R. § 404.1529; SSR 16–3p, 2017 WL 5180304, at *10 (Oct. 25, 2017). First, the ALJ must determine if there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce a claimant's symptoms. Second, the ALJ "must . . . evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [those] symptoms limit [the claimant's] capacity for work." 20 C.F.R. § 404.1529(c)(1).

To evaluate the "intensity, persistence, and limiting effects of an individual's symptoms," the ALJ must consider all available evidence from medical and nonmedical sources including medical opinions. *Id*. In addition, there are seven factors set forth in SSR 16–3p that an ALJ will consider. Pertinent here, two of those factors are: (1) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; and (2) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms. SSR 16–3p, 2017 WL 5180304 at *7–8; *see also* 20 C.F.R. § 404.1529(c)(3). Although an ALJ is not required to analyze all seven factors, she should show that she considered the relevant evidence. *Roach v. Comm'r Soc. Sec.*, No. 1:20-CV-01853-JDG, 2021 WL 4553128, at *10–11 (N.D. Ohio Oct. 5, 2021). Indeed, an ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16–3p, 2017 WL 5180304 at *10.

Here, the ALJ found that Plaintiff's pain symptoms did not limit Plaintiff's capacity to work as much as he had alleged. The ALJ wrote:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 16). The ALJ then summarized the record evidence (Tr. 16–18) before returning to the subjective symptom analysis:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent because the evidence shows that the claimant's low back and neck pain are managed with medication, without major side effects, as well as pain injections and minimal physical therapy. Physical

13

Case: 2:20-cv-05341-JLG-KAJ Doc #: 18 Filed: 11/22/21 Page: 14 of 16  PAGEID #: 869

> exams were normal overall, with no gait or neurologicaldeficits, and 5/5 strength throughout. Additionally, the claimant was consistently observed to be in no acute distress, and thus, there is no reason the claimant's symptoms cannot be accommodated by semi-skilled work.

(Tr. 19). This discussion demonstrates that, contrary to Plaintiff's claims, the ALJ considered Plaintiff's persistent efforts to obtain pain relief. When assessing Plaintiff's subjective symptoms, the ALJ determined that Plaintiff's low back and neck pain was managed with medication, pain injections, and minimal physical therapy—all of which constituted his efforts to obtain relief. (*Id.*)

And the ALJ specifically documented record evidence of Plaintiff engaging in efforts to obtain relief. She extensively noted his attempts to manage his symptoms with medication (Tr. 16–18 (citing Tr. 322, 363, 439–40, 424, 426–27, 437)); with physical therapy (*id.* (citing Tr. 289, 727, 729)); and with pain injections (*id.* (citing Tr. 312–13, 327, 331, 750–51, 434, 484)). Therefore, the Undersigned cannot find that ALJ failed to consider Plaintiff's efforts to obtain pain relief.

Further, the ALJ's overall assessment of subjective symptoms is supported by substantial evidence. The ALJ determined that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with record because Plaintiff's examinations were normal overall with no gait or neurological defects and 5/5 strength findings. (Tr. 19). That determination is substantially supported by the record, which reflects normal gait findings (Tr. 335, 313, 768, 770); "nonfocal, alert and oriented, cognitive exam grossly normal" neurological findings (Tr. 330, 370, 325, 367, 364, 443, 441, 436, 484); and 5/5 strength (Tr. 671, 768, 770), "good strength" (Tr. 330, 370, 325, 367, 364, 493, 443, 441, 436), or "no weakness" (Tr. 484) examination findings. The ALJ also found that Plaintiff's pain symptoms were not as profound as alleged because examinations consistently noted that he was not in acute distress. The

14

record likewise reflects that clinical observation. (*See e.g.*, Tr. 330, 370, 325, 367, 364, 493, 443, 441, 436, 484).

For all these reasons, the Undersigned finds that the ALJ did not commit reversible error when she assessed Plaintiff's subjective symptoms and that Plaintiff's allegation lacks merit.

## IV. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors (Doc. 15) and **AFFIRM** the Commissioner's decision.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date: November 22, 2021                              /s/ Kimberly A. Jolson
                                                                    KIMBERLY A. JOLSON
                                                                    UNITED STATES MAGISTRATE JUDGE